UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GARRETT LEE ZYLEMA,

        Plaintiff,

v.                                          Case No. 1:12-cv-170
                                             Hon. Hugh W. Brenneman, Jr.

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.
_____/

## OPINION

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) denying his claim for disability insurance benefits (DIB).

Plaintiff was born on May 10, 1963 (AR 152).[1] He alleged a disability onset date of May 1, 2009 (AR 152). Plaintiff earned a GED and had previous employment as a custodian, repairman, maintenance man and painter (AR 157). Plaintiff identified his disabling conditions as: ankylosing spondylitis; and pain in the neck, back and hip (AR 156). The administrative law judge (ALJ) reviewed plaintiff's claim *de novo* and entered a written decision denying benefits on June 27, 2011 (AR 10-19). This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

---

[1] Citations to the administrative record will be referenced as (AR "page #").

## I. LEGAL STANDARD

This court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. §405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Services*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Services*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of

not less than twelve months. *See* 20 C.F.R. § 404.1505; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

## II. ALJ'S DECISION

Plaintiff's claim failed at the fifth step of the evaluation. The ALJ initially found that plaintiff has not engaged in substantial gainful activity since the alleged onset date of May 1, 2009 and that he met the insured status requirements under the Act through December 31, 2013 (AR 12).

Second, the ALJ found that plaintiff has the following severe impairments: ankylosing spondylitis with cervical spondylosis; lumbar degenerative disc disease at L5-S1; bridging osteophytes; sacroiliac joint degeneration and hip pain (AR 12). At the third step, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (AR 14). Specifically, plaintiff did not meet the requirements of Listings 1.04 (disorders of the spine) or 14.09C (inflammatory arthritis-ankylosing spondylitis) (AR 14).

The ALJ decided at the fourth step that:

> [T]he claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) with the following limitations: lifting 10 pounds occasionally and less than 10 pounds frequently; standing and walking 2 hours and sitting 6 hours in an eight hour workday; occasional climbing ramps and stairs; never climbing ladders, ropes and scaffolds; occasional balancing, stooping, kneeling, crouching and crawling; he should avoid concentrated exposure to extreme heat and humidity; and he should avoid all exposure to hazards.

(AR 14). The ALJ also found that plaintiff was unable to perform any of his past relevant work (AR 17).

At the fifth step, the ALJ determined that plaintiff could perform a significant number of unskilled, sedentary jobs in the regional economy (defined as the State of Michigan) (AR 18). Specifically, plaintiff could perform the following jobs in the regional economy: inspector (4,500 jobs); packer (4,500 jobs); and clerical (7,000 jobs) (AR 18). Accordingly, the ALJ determined that plaintiff has not been under a disability, as defined in the Social Security Act, from May 1, 2009 (the alleged onset date) through June 27, 2011 (the date of the decision) (AR 18-19).

### III. ANALYSIS

Plaintiff raised two issues on appeal:

**A. The ALJ committed reversible error by not properly considering the opinion of plaintiff's treating specialist physician and by not supporting his proposed residual functional capacity assessment for plaintiff with substantial evidence.**

**1. Treating specialist**

Plaintiff contends that the ALJ failed to properly consider the opinion of his treating specialist, Richard Martin, M.D., a rheumatologist. A treating physician's medical opinions and diagnoses are entitled to great weight in evaluating plaintiff's alleged disability. *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters v. Commissioner of Social Security*, 127 F.3d 525, 529-30 (6th Cir. 1997). "The treating physician doctrine is based on the assumption that a medical professional who has dealt with a claimant and his maladies over a long period of time will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once, or who has only seen the claimant's medical records." *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). *See* 20 C.F.R. § 404.1527(c)(2) ("Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations"). Under the regulations, a treating source's opinion on the nature and severity of a claimant's impairment must be given

5

controlling weight if the Commissioner finds that: (1) the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques; and (2) the opinion is not inconsistent with the other substantial evidence in the case record. *See Gayheart v. Commissioner of Social Security*, 710 F.3d 365, 375 (6th Cir. 2013); 20 C.F.R. §§ 404.1527(c)(2) and § 416.927(c)(2). An ALJ is not bound by the conclusory statements of doctors, particularly where the statements are unsupported by detailed objective criteria and documentation. *Buxton*, 246 F.3d at 773; *Cohen v. Secretary of Health & Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992).

In summary, the opinions of a treating physician "are only accorded great weight when they are supported by sufficient clinical findings and are consistent with the evidence." *Cutlip v. Secretary of Health and Human Services*, 25 F.3d 284, 287 (6th Cir. 1994). Finally, the ALJ must articulate good reasons for not crediting the opinion of a treating source. *See Wilson v. Commissioner of Social Security*, 378 F.3d 541, 545 (6th Cir. 2004); 20 C.F.R. § 404.1527(c)(2) ("[w]e will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion").

On April 18, 2011, Dr. Martin gave a sworn statement regarding plaintiff's condition. Dr. Martin started treating plaintiff on June 4, 2009, approximately two months after his alleged disability onset date (AR 395). The doctor stated that, in his opinion, "it would be impossible" for plaintiff to work a forty-hour work week (AR 395). Dr. Martin summarized his reasons for that conclusion as follows:

> He has tremendous spinal restrictions. He needs help getting up from a chair. He can hardly bend his neck. He likely would not have the strength or would have too much pain to sustain prolonged sitting or standing. He couldn't drive a vehicle on a commercial basis, because his neck is so restricted. He couldn't check his blind spots; he couldn't be safe. And then, he has clinically significant depression which also impacts his ability to cope.

6

(AR 396). With respect to specific work restrictions, Dr. Martin stated: that plaintiff could lift three to five pounds; that plaintiff could not change postural positions (i.e., no stooping, crawling, kneeling, climbing stairs or ladders); that plaintiff would need the option of changing position between sitting and standing on an as needed basis; that plaintiff would need to "get up, stretch and move around" every 30 to 60 minutes "because he would stiffen up so much"; and that he should not work at unprotected heights due to his lack of balance (AR 396-98). The doctor stated that "it would be pretty hard" for plaintiff perform even sedentary work such as sitting at a desk and answering a telephone (AR 397).

The ALJ addressed Dr. Martin's opinion as follows:

> As for the opinion evidence, in April 2011 claimant's rheumatologist, Richard Martin, M.D., opined claimant would not be able to work 8 hours a day. He opined claimant had tremendous spinal restrictions, needed help getting out of a chair and could hardly bend his neck. He indicated claimant could only stand 10 minutes, should not lift more than 3-5 pounds, and could not bend or stoop without falling forward. He indicated claimant would need breaks, the option to sit or stand, and would likely never return to full time work (Exhibit 11F).
>
> Controlling weight may not be given to a treating source's medical opinion unless the opinion is well supported by medically acceptable clinical and laboratory diagnostic techniques, and is consistent with the other substantial evidence in the record (20 CFR 404.1527(d)(2) and Social Security Ruling 96-2p). In this case, the conclusions of treating physician Dr. Martin cannot be given controlling weight. His conclusions are neither well supported by medically acceptable clinical and laboratory diagnostic techniques, nor consistent with the other substantial evidence in the case record. While claimant undoubtedly has functional limitations associated with his physical impairments, the weight of the evidence of record does not establish claimant is currently unable to perform the reduced range of sedentary exertion work described above. The undersigned recognizes that ankylosing spondylitis can cause significant functional limitations; however, the current record indicates claimant is doing rather well, despite his diagnosis. By January 2010, after his medication was increased, claimant reported improvement. By April 16, 2010, he was more mobile and independent in dressing, his morning stiffness was reduced and his pain was acceptably controlled. Furthermore, claimant continued to show improvement and his morning stiffness was down to 30 minutes in January 2011, his pain remained acceptably controlled, and his scores reflected only a mild functional

>impairment (Exhibit 10F). Moreover, claimant's Function Reports indicate that he was able to perform personal care, with only some difficulty with shoes and socks. He reported he was able to prepare simple meals, do some housework, spend time with others and follow directions (Exhibits 5E and 10E). Dr. Martin claims that the claimant has balance difficulties and that he falls down; however, the records do not support that he has had frequent falls. Dr. Martin is clearly overstating the claimant's current functional limitations. As a result, the opinion of Dr. Martin is given limited weight (20 CFR 404.1527).

(AR 16-17).

Based on this record, the ALJ provided good reasons for giving Dr. Martin's opinions limited weight. In January 2011, Dr. Martin found that plaintiff had partially controlled ankylosing spondylitis, with no cardiopulmonary manifestations or arthritis (AR 392) (Exhibit 10F). Plaintiff reported morning stiffness for 30 minutes (AR 392) as opposed to a "few hours" as reported in his adult function report from August 2009 (AR 187). In January 2011, Dr. Martin found that plaintiff had a Stanford Health Assessment II Score indicating only "mild functional impairment" with his depression partly improved (AR 392). These results are not consistent with Dr. Martin's testimony in April 2011 that "it would be impossible" for plaintiff to work a 40-hour workweek (AR 395). In addition, plaintiff's function reports from August 2009 and July 2010 (AR 187-96 and 227-34) (Exhibits 5E and 10E) indicate that he is able to perform a number of daily activities, such as walking, driving, watching television for eight hours a day and performing some housework (washing dishes, neaten blankets on the bed, sweep, vacuum, iron, talk on the telephone and talk to visitors) (AR 189-91, 229-31). While plaintiff may not have engaged vigorously in all of these activities, such endeavors are not indicative of an invalid, incapable of performing sedentary types of work. *See, e.g., Pasco v. Commissioner of Social Security*, 137 Fed. Appx. 828, 846 (6th Cir. 2005) (substantial evidence supported finding that plaintiff was not disabled where plaintiff could "engage in daily activities such as housekeeping, doing laundry, and maintaining a neat, attractive

8

appearance" and could "engage in reading and playing cards on a regular basis, both of which require some concentration") (footnote omitted); *Bogle v. Sullivan*, 998 F.2d 342, 348 (6th Cir. 1993) (a claimant's ability to perform household and social activities on a daily basis is contrary to a finding of disability); *Gist v. Secretary of Health and Human Services*, 736 F.2d 352, 358 (6th Cir. 1984) (a claimant's capacity to perform daily activities on a regular basis will militate against a finding of disability). Accordingly, plaintiff's claim of error is denied.

## 2. Residual Functional Capacity (RFC) assessment

While plaintiff's statement of errors included a claim that the ALJ's RFC assessment was not supported by substantial evidence, plaintiff does not address this issue. Rather, plaintiff contends that the ALJ used "meaningless" boilerplate language to evaluate his credibility, when he stated that:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.

(AR 15). Plaintiff relies on the Seventh Circuit decision in *Bjornson v. Astrue*, 671 F.3d 640 (7th Cir. 2012), which criticized the Agency's use of this language in ALJ decisions:

> One problem with the boilerplate is that the assessment of the claimant's "residual functional capacity" (the bureaucratic term for ability to work) comes later in the administrative law judge's opinion, not "above" — above is just the foreshadowed conclusion of that later assessment. A deeper problem is that the assessment of a claimant's ability to work will often (and in the present case) depend heavily on the credibility of her statements concerning the "intensity, persistence and limiting effects" of her symptoms, but the passage implies that ability to work is determined first and is then used to determine the claimant's credibility. That gets things backwards. The administrative law judge based his conclusion that Bjornson can do sedentary work on his determination that she was exaggerating the severity of her headaches. Doubts about credibility were thus critical to his assessment of ability to work, yet the boilerplate implies that the determination of credibility is

9

> deferred until ability to work is assessed without regard to credibility, even though it often can't be. In this regard we note the tension between the "template" and SSR 96–7p(4), www. ssa. gov/ OP_ Home/ rulings/ di/ 01/ SSR 96– 07– di– 01. html (visited Jan. 4, 2012), which states that "an individual's statements about the intensity and persistence of pain or other symptoms or about the effect the symptoms have on his or her ability to work may not be disregarded solely because they are not substantiated by objective medical evidence." The applicant's credibility thus cannot be ignored in determining her ability to work (her residual functional capacity, in SSA-speak).

*Bjornson*, 671 F.3d at 645-46. The court also opined that "[t]he Social Security Administration had better take a close look at the utility and intelligibility of its 'templates.'" *Id.* at 646.

While the Seventh Circuit noted that "we first stubbed our toe" on this "opaque boilerplate," *id.* at 644, the court did not summarily reverse the ALJ's decision for using the boilerplate, *see id.* at 644-49. Rather, the Court considered the ALJ's specific reasons for rejecting the ALJ's credibility determination. *See id.* at 646 ("[t]he administrative law judge based his doubts about Bjornson's credibility on his assessment of the medical reports or testimony of the three doctors whom we've mentioned"). Assuming that this Court agreed with the Seventh Circuit's characterization of the Commissioner's boilerplate language, the ALJ's use of the language is not, in and of itself, grounds for reversal. Accordingly, plaintiff's claim of error is denied.

> **B.  The ALJ erred by not following the vocational expert's answers to factually correct hypothetical questions.**

Plaintiff contends that the hypothetical question posed to the vocational expert (VE) was not accurate. An ALJ's finding that a plaintiff possesses the capacity to perform substantial gainful activity that exists in the national economy must be supported by substantial evidence that the plaintiff has the vocational qualifications to perform specific jobs. *Varley v. Secretary of Health and Human Services*, 820 F.2d 777, 779 (6th Cir. 1987). This evidence may be produced through

the testimony of a VE in response to a hypothetical question which accurately portrays the claimant's physical and mental limitations. *See Webb v. Commissioner of Social Security*, 368 F.3d 629, 632 (6th Cir. 2004); *Varley*, 820 F.2d at 779. However, a hypothetical question need only include those limitations which the ALJ accepts as credible. *See Blacha v. Secretary of Health and Human Services*, 927 F.2d 228, 231 (6th Cir. 1990).

Here, the ALJ's hypothetical question posed to the VE included those limitations as set forth in the RFC (AR 14, 61-62). In response to this hypothetical question, the VE testified that such a person could perform: 4,500 inspector/checker jobs which were sedentary without a sit/stand option; 4,500 packager jobs; and 7,000 clerical assistant jobs (AR 61-62). Plaintiff's counsel posed a different hypothetical question to the VE, which included some of the limitations proposed by Dr. Martin: the need to take a break every 30 minutes to one hour during a typical 8-hour workday; the inability to stoop; and lifting limited to 3 to 5 pounds (AR 64-65). Plaintiff contends that in response to this "accurate hypothetical question," the VE testified "that there were no jobs available to [p]laintiff." Plaintiff's Brief at p. 14. This is not entirely accurate. With respect to taking breaks, the VE testified that a person would be unemployable if his need to take breaks exceeded a lunch break, a 10-15 minute mid-morning and mid-afternoon break, and five minutes per hour to use the restroom (AR 65). With respect to stooping and weight lifting restrictions, the VE testified that there were a "very large number of jobs" which did not require stooping and that "there still would be jobs" if the individual could lift only 3 to 5 pounds (AR 65).

Based on the VE's testimony, the obstacle to plaintiff's employment would be the need to take breaks every 30 to 60 minutes, if those breaks exceeded three extended breaks (mid-morning, lunch and mid-afternoon) and eight restroom breaks. Here, the ALJ rejected Dr. Martin's

requirement that plaintiff take breaks every 30 to 60 minutes per 8-hour workday. Based on this record, the ALJ could properly omit this restriction in a hypothetical question to the VE.[2] Accordingly, plaintiff's claim of error is denied.

### IV. CONCLUSION

The ALJ's determination is supported by substantial evidence. Accordingly, the Commissioner's decision will be affirmed pursuant to 42 U.S.C. § 405(g). A judgment consistent with this opinion will be issued forthwith.

Dated: September 23, 2013   /s/ Hugh W. Brenneman, Jr.
HUGH W. BRENNEMAN, JR.
United States Magistrate Judge

---

[2] Even if the ALJ had adopted Dr. Martin's opinion regarding plaintiff's need to take 8 to 16 breaks per day, it is conceivable that such breaks could fall within the 11 allotted breaks identified by the VE.